IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MARY SUE NEWTON and<br>SAMUEL RAY FORD NEWTON,<br><br>Plaintiffs,<br><br>v.<br><br>ETHICON, INC., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 3:20-cv-00021-ALB-JTA<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Ethicon Inc., Johnson & Johnson, and Ethicon LLC's ("Defendants") Motion for Summary Judgment. (Doc. 23). Because Plaintiff Mary Sue Newton's claims were not brought within Alabama's two-year statute of limitations,[1] Defendants' motion is GRANTED.

---

[1] Plaintiff Samuel Ray Ford Newton, Mary Sue Newton's husband, asserts a claim for loss of consortium. Because his claim is derivative of his wife's claims, the Court need not address it separately—the success of his claim depends on the success of his wife's claims. *Dale v. Kelly*, 620 So. 2d 632, 632 n.1 (Ala. 1993); *Campbell v. Brown & Williamson Tobacco Corp.*, No. 02-0184, 2006 WL 8437669, at *2 (S.D. Ala. May 17, 2006). So, because his wife's claims are barred by the applicable statute of limitations, so too is his claim barred. *See Reed v. Stempien*, 475 So. 2d 841, 842 (Ala. 1985) (applying same limitations period to derivative loss of consortium claim and claim from which it was derived); *Campbell*, 2006 WL 8437669, at *2 ("[W]hen an injured spouse's claim is barred by the applicable statute of limitations for the underlying injury, the spouse is prevented from recovering for a loss of consortium claim . . . .").

## BACKGROUND

This case is on remand after pretrial proceedings in MDL litigation over transvaginal mesh medical devices. *See In re Ethicon, Inc., Pelvic Repair System Products Liability Litigation*, 2:12-MD-2327. The following facts are taken in the light most favorable to the nonmovant, the plaintiffs.

Defendants manufactured and/or marketed transvaginal mesh devices. Plaintiff was implanted with one of these transvaginal mesh devices on May 31, 2005, in Valley, Alabama, by Dr. James J. Bendell. Almost immediately following her May 31, 2005 implant surgery, Plaintiff developed complications from the transvaginal mesh device. Plaintiff began "feeling the fringe . . . from the mesh." She developed worsening urinary incontinence, chronic vaginal and pelvic pain, mesh erosion, and pain with intercourse ("dyspareunia").

In 2007, Plaintiff was referred to Dr. Brian Raybon to evaluate her transvaginal mesh complications. Plaintiff understood, in 2007, that the reason for the referral was because of the device that Dr. Bendell implanted in 2005. On January 8, 2008, Dr. Raybon removed the suburethral sling and repaired the vaginal mesh erosions. In his intra-operative findings, Dr. Raybon noted that Plaintiff's device "was eroded along the edge of it, the entire way across the urethra and one pubic rami to the other."

Plaintiff filed suit against Defendants, the manufacturers of the transvaginal mesh, on May 13, 2013. The operative complaint, as part of the MDL, brings fifteen counts that arise from the defective condition of Defendants' product. Defendants moved for summary judgment on (1) all claims based on the Alabama two-year statute of limitations and, separately, on (2) strict liability failure to warn (Count III). Plaintiff concedes that judgment should be granted on the following counts:

- Strict liability manufacturing defect claim (Count II);
- Strict liability defective product claim (Count IV);
- Common law fraud claim (Count VI);
- Constructive fraud claim (Count VIII);
- Negligent misrepresentation claim (Count IX);
- Negligent infliction of emotional distress claim (Count X);
- Breach of express warranty claim (Count XI);
- Breach of implied warranty claim (Count XII);
- Violation of consumer protection laws claim (Count VIII);
- Gross negligence claim (Count XIV); and
- Unjust enrichment claim (Count XV).

But Plaintiff argues that four substantive counts should go forward to trial: Negligence (Count I), Strict liability failure to warn (Count III), Strict liability design defect claim (Count V), and Fraudulent concealment (Count VII).[2]

## STANDARD

The court will grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). The court does not weigh the facts. *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1994). But the court will determine "whether … there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A mere scintilla of supporting evidence is insufficient. *Id.* at 252.

The moving party need not produce evidence disproving the opponent's claim; instead, the moving party must demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In turn, the nonmoving party must go beyond mere allegations to offer specific facts showing a genuine issue for trial exists. *Id.* at 324. When no genuine issue of material fact

---

[2] Plaintiff also opposed summary judgment on several counts that are most accurately described as separately enumerated requests for relief, such as loss of consortium (Count XVI) and punitive damages (Count XVI).

exists, the court determines whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## DISCUSSION

Defendants contend that Plaintiff's claims cannot be maintained in light of Alabama's two-year statute of limitations. For products liability actions like this one, the applicable statute of limitations under Alabama law is two years. Ala. Code § 6-2-38(l). This limitations period is not tolled until a plaintiff discovers the cause of action. *See Spain v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1305-06 (11th Cir. 2000). Instead, it begins to run "when there has occurred a manifest, present injury," which means there are "observable signs or symptoms . . . the existence of which is medically identifiable." *Griffin v. Unocal Corp.*, 990 So. 2d 291, 310 (Ala. 2008).

Here, there is no dispute that Plaintiff was injured by the transvaginal mesh in the timeframe of 2005 through 2008 such that her claims could have been brought at that time. She suffered from complications almost immediately after the device was implanted in 2005 and then had a remedial operation in 2008 to mitigate those complications. She did not file this lawsuit, however, until 2013. That makes her case well outside of Alabama's two-year statute of limitations.

Plaintiff concedes that Alabama's statute of limitations applies to her claim. But she makes two arguments that she brought her claims within that statute. Neither argument is persuasive.

First, Plaintiff argues that her cause of action did not accrue until "Defendants[] disclosed to the public previously non-publicized risks defendants had been aware of from the inception of their" device. (Doc. 26 at 5-6). This argument, put charitably, makes no sense. It is true that, as Plaintiff argues, "there are cases where the act complained of does not itself constitute a legal injury at the time, but plaintiff's injury only comes as a result of, and in furtherance and subsequent development of, the act defendant has done." *Payton v. Monsanto*, 801 So. 2d 829, 835 (Ala. 2001). But this is not one of those cases. Plaintiff was injured by a defective product, not Defendants' disclosure of non-publicized risks. Plaintiff suffered injuries shortly after the transvaginal mesh was implanted in 2005, and she saw a doctor for an evaluation and operation to mitigate those injuries in 2008. All the elements of her product liability claims existed at that time. *See, e.g., Collins v. Davol, Inc.*, 56 F. Supp. 3d 1222, 1229 (N.D. Ala. 2014) ("[U]nder Alabama law, a tort cause of action stemming from a defective medical device accrues when the medical device fails and injures the recipient of the device.").

Second, Plaintiff argues that the statute of limitations was tolled until 2012 because Defendants fraudulently concealed her cause of action until that time. This

argument is on much better legal footing. Alabama law provides that, "[i]n actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." Ala. Code § 6-2-3. The Alabama courts have extended this statute to "other torts not arising in fraud" and have held that its tolling rule "applies to a fraudulent concealment of the existence of a cause of action." *DGB, LLC v. Hinds*, 55 So. 3d 218, 224 (Ala. 2010). In other words, if a plaintiff can prove that a defendant fraudulently suppressed her cause of action—whatever that action may be—then she has two years from the discovery of her cause of action to file a lawsuit.

The problem for Plaintiff is that there is no genuine dispute of material fact on this issue that would warrant denying summary judgment. To benefit from this rule, a plaintiff must introduce substantial evidence of (1) the time and circumstances of the discovery of the cause of action, (2) the facts surrounding how defendant concealed the cause of action or injury, and (3) what prevented plaintiff from discovering the cause of action. *See DGB, LLC*, 55 So. 3d at 227. "[G]eneralized allegations that a defendant had concealed a cause of action, unsupported by specific facts concerning that concealment or the plaintiffs' discovery of that concealment, [are] insufficient to toll the statute of limitations under § 6–2–3." *McKenzie v. Janssen Biotech, Inc.*, No. 1170787, 2019 WL 4727472, at *5 (Ala. Sept. 27, 2019)

7

(rejecting argument for fraud-based tolling in a products liability case); *see also Smith v. National Sec. Ins. Co.*, 860 So. 2d 343, 345, 347 (Ala. 2003) (rejecting fraud-based tolling); *Lowe v. East End Mem'l Hosp. & Health Ctrs.*, 477 So. 2d 339, 341–42 (Ala.1985) (same); *Miller v. Mobile Cnty. Bd. of Health*, 409 So. 2d 420, 422 (Ala. 1981) (same).

Here, Plaintiff has adduced no evidence that (1) she did not know she had suffered an injury in 2005-2008 because of the transvaginal mesh, (2) that Defendants concealed her cause of action, or (3) that she could not have discovered the cause of action absent Defendants' fraud. Instead, Plaintiff testified in her deposition that she thought the transvaginal mesh was the cause of her complications when she sought treatment for those complications in 2007/2008:

> When I went to the doctor --I went to several doctors before I found one that would remove it. When I went to the final doctor that would, he told me it was twisted and it had carved me and it carved me badly until he had to graft me and then later he implanted another sling. . . .
> Now, I still had inflammation, I still hurt some, but after he grafted me and put in the new sling, I was better. There was still some pain, yes, but I was better. It took a while for all this to heal.

(Doc. 23-1). It is true, as Plaintiff argues, that she testified that she first saw an attorney advertisement for mesh litigation in 2012. *See* Doc. 35-5. But that testimony says nothing about whether Defendants fraudulently prevented her from learning about the existence of her cause of action before then. Plaintiff has not introduced

evidence that would create a jury question on whether Defendants fraudulently concealed her cause of action.

## CONCLUSION

Based on the above reasoning, Defendants' Motion for Summary Judgment (Doc. 23) is **GRANTED**. A final judgment will be entered by separate order.

**DONE** and **ORDERED** this 8th day of April 2020.

/s/ Andrew L. Brasher
ANDREW L. BRASHER
UNITED STATES DISTRICT JUDGE